The next case called, Agenda Number 7-121483 in re Jarquan B, minor. You may proceed. Good morning, Your Honors. May it please the Court, Darren Miller on behalf of the petitioner, Jarquan B, Office of State and Public Affairs. Your Honors, effective January 1, 2016, the legislature amended Section 5-7101B of the Juvenile Court Act to absolutely bar sentencing juveniles to the Juvenile Department of Justice for misdemeanors. After the effective date of that statute on April 26, 2016, the Court sentenced Jarquan to the Department of Juvenile Justice in clear violation of the statute. The issue here is, what was the intent of the legislature when it passed Section 7-7101B, or when it amended it? And our position is it's an absolute prohibition of sentencing juveniles to the Department of Juvenile Justice. Well, at the same time, Section 724 says any sentence that was available at the time was placed on probation. So there is a direct conflict. Correct. Well, there are two competing statutes. Our position is, before we even get to that, as part of this analysis, you look at the statute that was amended, 7101B, and ask, is it clear? And if it's clear, you don't even move on to any other statutes. You just apply it as written. And the state says if you look at 724, it's clear. Right. But our position is that for Section, you start with 710, because that was the more recently amended statute. And we're trying to ascertain what was the intent of the legislature when they amended that statute. And of course, why didn't the legislature amend 724 at the same time? Well, because I don't think it was necessary. If the language of 710 is clear, if you look at the language, it says a minor may be committed to the Department of Justice, provided that the commitment to the Department of Juvenile Justice shall be made only if a term of imprisonment in the penitentiary system of the Department of Corrections is permitted by law for adults found guilty of the same offense. So was there a commitment to the Department of Juvenile Justice? Yes. Was it for a misdemeanor offense? Yes. And was it after the effective date of the statute, January 1st? Yes. So I mean, the legislature simply wrote this. Don't do this anymore. Effective January 1st, we don't want you sending kids to the Department of Juvenile Justice. And I think beyond the plain language of the statute, if you look at the public policy, and as can be ascertained from the legislative debates, there are three real public policies for 710. It's to reduce the costs of incarcerating juveniles, to address the overcrowding in the Department of Juvenile Justice, and perhaps most importantly, to stop sending juveniles or misdemeanors to a place where they don't belong, just as adults who commit misdemeanors don't belong in prison. Mr. Miller, you argue that there is a presumption that the legislature intended multiple statutes related to the same subject matter to be read harmoniously, and the state, in light of that, their interpretation, which arguably has a harmonious construction, they say that such sentences are prohibited going forward, but Section 724 still allows them to be imposed in revocation proceedings if they were available at the time of the original sentence. So that's arguably a harmonious construction between the two statutes. But even though you argue that it should be harmonious, doesn't your interpretation only allow the court to apply the amended version of 5710 and forbids the court from applying the plain language of 5-720 subparagraph 4? I mean, our position is they can be read harmoniously, but in a different respect. Yeah, how is that harmonious is my question. Yeah, our position is that 710 only places one limit on Section 720, and that's that effective January 1, 2016, one of your many options that were initially available is now off the table, and that's to sentence minors to the Department of Juvenile Justice for misdemeanors. And I think that's a harmonious way to read it, and ultimately the goal here is to ascertain the intent of the legislature. What did the legislature intend? Mr. Miller, can I just go back again on what Justice Thomas said? 720 really is the only means of authority for the court to sentence anyone upon revocation of probation because 710B is the initial sentence, and it doesn't provide for any violation of probation. So wouldn't that mean that they'd have to apply that 710, or I should say 720? I'm sorry, I'm not sure I followed that question. Well, Section 7204, why can't it be relevant? Because this provision provides the only means of authority for the circuit court to sentence an individual upon revocation of probation. I think it is relevant. I mean, once you're past the plain reading, and if you're going to look to Section 720, then essentially, you know, arguably you have two competing statutes. One says don't send kids to the Department of Juvenile Justice anymore for misdemeanors, and the other one says, well... But that's for only initial sentences, isn't it? No, no. 710 says you can't do it anymore. Period. It doesn't apply to only initial sentences. There's no phraseology in 710 saying don't apply this to initial sentences. Now, there's no question that this is moot because this person has already served his time and is out, right? Correct, yeah. How many others are there similarly situated? I mean, this is over a year, 15 months or whatever it is, since January of 2016. How many misdemeanors could there possibly be similarly situated? Your Honor, I don't have the statistics, but the problem here and how this could keep continuing is part of 720 when the courts allow it to sentence, impose any sentence that they could have in the first instance, the way courts have construed that statute is that they can keep violating the minor's probation and place them back on probation. So they could be on probation for one year, right before that year expires they could vacate it, place them on again for another year, and that could continue in theory for years. And it's not unusual for courts to keep minors in the system in that manner in order to help them deal with their issues. So, you know, I don't have the statistics, but this could go on for years before this is finally resolved. Can we look at one section of an act to determine the temporal reach of another? For example, 710 doesn't say what it's effective, but in 724 it specifically relates to our references 5-710. So isn't the language of 720 therefore not an explicit statement on the reach of the new amendment in section 710? No, I don't think so. Again, I think the ultimate goal here is what did the legislature intend when it amended section 710? And the legislature, sure, it could have crafted it, I guess, more carefully, could have scoured all of the statutes and seen what could have applied or could have contradicted, but the legislature made a choice and they just wrote a statute that said effective January 1st, 2016, stop doing this. Stop sending misdemeanants or juveniles to the juvenile department of justice. But as the questions of Justices Thomas and Burke seem to highlight, these sections could be read harmoniously as argued by the state. 710 applies to new sentences and 720-4 maintained the sentences available under 710 at the time of the initial sentence. That's one harmonious way and there's another harmonious way where there's a clear legislative intent to override that to stop these sentences and just to take one of the options, so to speak, away from the judge. And that's, hey, you can keep doing whatever you could have done during the initial sentence, it's just we've determined that this one option of sending a minor to the Department of Juvenile Justice for a misdemeanor is no longer appropriate. I'm just having a difficult time seeing how that's harmonious. You keep saying there's another harmonious way that completely defeats the plain reading of 720. Well, Your Honor, even if you consider them to be conflicting or not in harmony, there are numerous rules of statutory interpretation. For example, the last enacted statute will prevail over an older statute. And here there's no question that 710 was amended after 720 was drafted. The rule of lenity favors the defendant. And another crucial... But don't we get to those aides only if we can't read them harmoniously? Well, Your Honor, I think that it depends if it's ambiguous, if the statutes are... Yeah, normally you don't get to other aides unless there's a problem with the statutes. But another rule that this Court applies, even over the plain language and over all others, is you should not... The legislature does not intend an absurd result. And I think if you file a state suit, essentially the person in Jack Kwan's position who committed a misdemeanor maybe a year or two ago, whatever, can get sentenced to the Department of Juvenile Justice. But someone who commits perhaps even a more serious misdemeanor more recently cannot. And it's an absurd result to punish someone more harshly for a more remote crime and possibly a less serious crime. The defendant was sentenced here for the violation, for the criminal offense, not for the violation of probation. Isn't that true? Correct. Yeah, and that's my point, that you're sentencing someone more harshly for an older, more remote offense than someone who committed more recently. But he's being sentenced in accordance with a law that was in effect at the time that he was initially placed on probation. Yeah, but my point is that the legislature could not have intended that the statute be applied as the state's asking this Court to apply it because that would be the result, it would be an absurd result. The violation, the conduct that was the violation of the probation that triggered the hearing where the judge sentenced him for the earlier crime, misdemeanor, to Department of Corrections, was that a new crime or was it a technical violation? Technical violation, Your Honor. I believe it was the minor who ran away and missed school. And finally, the statute on statutes, even if all that, even if all the rules of construction are rejected, the statute on statutes allows the defendant to elect the statute that's more mitigating. And that was applied by this Court in People v. Reyes. And I think that the statute on statutes clearly gives the defendant the option to elect either to be sentenced under the old statute or under the new statute. I believe that's all I have at this point unless there are more questions. Seeing none, thank you. Mr. Schneider. Good morning. May it please the Court. Assistant Attorney General Josh Schneider on behalf of the people of the State of Illinois Counsel. We've got two statutes. They're both clear. They're both unambiguous. And they both concern the sentences available in juvenile court proceedings. But they differ on the availability of the commitment to the Department of Juvenile Justice for juvenile misdemeanors. Section 5-720 subsection 4 applies specifically to probation revocation proceedings. And it says that a court determines that probation has been violated may impose any other sentence that was available under Section 5-710 at the time of the initial sentence. The other statute, of course, is 5-710, which as of 2016 says that commitment to the DJJ is no longer available for juvenile misdemeanors. So the question is, well, which applies in probation revocation proceedings? And to me, the answer is clear. It is Section 5-720 subsection 4, which specifically governs probation revocation proceedings. A good example of this same sort of analysis is in this court's decision in People v. Botrick, where the court looked at two provisions, both of which addressed the appointment of independence examiners in SVP proceedings. One statute addressed the appointment of SVP examiners in periodic re-exam proceedings, and the other addressed appointments generally. The court said, well, in periodic re-exam proceedings, we look at the statute governing periodic re-exam. Here, we're in the specific context of probation revocation proceedings, so we should look at the statute that specifically governs probation revocation. And that statute expressly directs the sentencing court to consult the version of Section 5-710 that was in effect at the time of the initial sentence of probation. And there are good reasons to do that. The counsel mentioned the importance of looking at the legislative intent, but there's an overarching legislative intent where the entire scheme, the juvenile justice system, has a bunch of competing interests that need to be harmonized. But it hopefully contains a couple of express statements of legislative intent and purpose. One of those is Section 5-715.6, which talks about the importance of compelling compliance with the terms of probation by providing swift, certain, and fair punishments. Punishments must be certain for them to be effective deterrents, especially for juveniles who maybe don't have the same sort of advanced ability to foresee consequences and govern themselves otherwise. It's also under Section 5-101, subsection 1, the intent to promote a juvenile justice system that will impose accountability. You can't impose accountability if you don't have any sense of what will happen if you misbehave. Going off of that, it's also important to maintain the credibility of the juvenile court. If the court says, if you violate probation, you will face such and such punishment, you need to be able to follow through. Otherwise, the lesson being taught to the juvenile is that you can disregard these sorts of admonishments, which is exactly what happened here. The court kept telling respondents, hold the keys to the cell in your hand. If you violate, I'm going to send it to DJJ. It gave him chance after chance after chance. It finally determined after consulting with the probation officer that the respondent simply was not going to be able to comply with the terms of probation, that the services he needs were not going to be available at his residential placement. He refused to stay there. The only place they could put him until he was old enough for the new type of transitional living program was the Department of Juvenile Justice, which could provide him the services that he needed but was unwilling to avail himself of at his current residential placement. Mr. Schneider, with respect to Senator Raul's comment and the amendment, doesn't he state that we no longer commit? Does it no longer mean not anymore, not now as informally, and in the past but not now? If these are correct definitions, doesn't that mean that commitment to the Department of Juvenile Justice is not available after January 1, 2016? Well, it's certainly true that for an initials, a juvenile who commits an offense and is sentenced after January 1, 2016 and commits a misdemeanor, they may not be committed to the Department of Juvenile Justice. That's certainly true. But it doesn't mean that if they committed that same offense prior to January 1, 2016, in this case it was January 1, 2015, that they can't be sentenced to the Department of Juvenile Justice because Section 520 of Subsection 4, or 720 of Subsection 4, exposes that they may. And really, that distinction of Section 720 of Subsection 4 governing sentencing and probation and revocation proceedings and Section 5-710 governing initial sentencing proceedings is the only way to harmonize these statutes. That doesn't do pretty serious violence to their plain language. Counsel argued that you could harmonize these two statutes by saying, yes, Section 720 of Subsection 4 allows you to impose any sentence that was available at the time of initial sentencing to probation, except that you can no longer sentence them to DJJ for misdemeanors. But that is doing exactly what this Court time and time again has cautioned against, which is reading an unwritten exception into the plain language. Section 5-720 of Subsection 4. It also essentially eliminates the retrospective portion of 720 of Subsection 4, because it's no longer any sentence that was available at the time of initial sentencing under 5-710. It's any sentence that was available under that section that is still available under that section, in which case all of the legislative intent of 720 of Subsection 4 is undermined. It no longer can provide certain consequences. It no longer has to turn force. It no longer provides accountability, which ultimately is the overarching purpose of the juvenile court system, which is to take juveniles and try and provide them with the tools and education necessary to divert them from ending up in the adult criminal justice system, where the consequences of noncompliance and such is far more serious. We'd much rather teach them accountability when they're juveniles in the juvenile court system than have to pass them along to the adult system and try and impart those lessons there. Counsel mentioned the rule of lenity and the statute on statutes, but all of these aids to construction are really tools of last resort. We don't have adequate guidance from the plain language of the statutes, and here we have a very clear statement of intent in the plain language of 5-720 of Subsection 4, which is that when you sentence someone at probation or vacation, you sentence them under Section 710 at the time of the initial sentence. So the rule of lenity, the statute on statutes, they are simply unnecessary to consult. The last point I would make is, I believe there's an argument in the briefing that Section 5-710, Subsection 1B should take precedence because the more specific statute regarding only commitment to the DJJ where Section 720, Subsection 4 applies to all sentences and probation or vacation proceedings. But that also would completely eliminate the retrospective focus of 720, Subsection 4, because every subsection of Section 710 is more specific in the sense that it applies to only a specific type of sentence, probation, restitution, community service, that sort of thing. So if any amendment to Section 710 is going to take precedence over Section 720, then 720 no longer has any meaningful retrospective focus. And we know that the legislature is continually updating and amending Section 710, roughly once a year. In fact, Subsection 1B of Section 710 was amended again effective January 1, 2017. I imagine there will be continued adjustments moving forward. But Counsel, he wasn't sentenced to the Department of Juvenile Justice before January 2016. It was after. It was in March 2016. That's correct. So it was after the statute required no more sentencing to the Department of General Justice. That's correct. And had he been initially sentenced, had that March 20, or it was April 2016, he was initially sentenced to the, or he was sentenced to the. 2015, I think. Well, in 2015, he was sentenced to probation. Yes. In 2016, he actually violated his probation in 2015. A warrant was issued for his arrest in December of that year, and then he was finally picked up in February of 2016. Had he not evaded for so long, perhaps he would have been sentenced under the 2015 Act before the 2016 Act. But when he was sentenced in his probation revocation proceedings in 2016, the court turned to Section 720, Subsection 4, which governs those proceedings, and said, well, it says I can sentence him to any sentence that was available under Section 5-710 at the time of the initial sentencing. That is, in 2015. And under Section 5-710 in 2015, the DJJ wasn't available to sentence. So if there are no further questions, we ask the court to affirm the order. Thank you. Thank you. Rebuttal. I just wanted to touch briefly on the harmonious argument. I mean, the state's argument that 720 is harmonious with 710 has the same issues that our construction has. In other words, the state is asking to read an exception into 710-1B, essentially to say, to read into that statute, well, yeah, you can't send juveniles to the Department of Corrections for misdemeanor, except for probation revocation violations. That's not there. So it's not harmonious with the... And if you're going to look to the two statutes, and if you're going to find that our argument is incorrect that it's harmonious, you have to find that the state's argument that it's harmonious is also incorrect. Then you have conflicting statutes. And virtually every rule of statutory construction favors us. And going back to the legislative debates, Senator Raul, this is a quotation. The amendment, quote, makes certain that we no longer commit juvenile misdemeanors to the Department of Juvenile Justice. That's a clear legislative intent. If you look at the statute, section 710-1B as written, it clearly states, you just can't do it. The rule of lenity favors us. And again, construing the statute the way the state asks leads to the absurd result that you're punishing more distant and perhaps less serious crimes more severely than more recent crimes. And that makes no sense. And it makes perfect sense that the legislature came to the conclusion that, well, gee, adults who commit felonies aren't sent to prison. So why are kids who commit felonies sent to prison? And section 710 just puts an end to that. In fact, on January 1st, 2016, the minor's commitment occurred after the effective date of that statute. But it was improper. So unless there are any other questions, we'd ask that you reverse the appellate order. Thank you. Case number 121483 will be taken under advisement as agenda number 7. Mr. Miller and Mr. Schneider, we thank you for your arguments this morning, and you are excused.